IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LISA D.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-1297-SMY |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Lisa D. seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff applied for DIB in March 2019, alleging a disability onset date of November 1, 2017 (Tr. 40, 372, 382, 933). Her claims were denied initially on August 15, 2019, and on reconsideration on November 5, 2019 (Tr. 77-108, 111-138). Plaintiff requested a hearing on November 27, 2019.

An evidentiary hearing was held on June 18, 2020 (Tr. 927-957) and a supplemental hearing took place on February 12, 2021 (Tr. 35-76). An Administrative Law Judge ("ALJ") denied Plaintiff's application on February 24, 2021, following the supplemental hearing (Tr. 11-34). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed.R.Civ.P. 5.2(c) and the Advisory Committee Notes.

final agency decision subject to judicial review (Tr. 2-7).  Plaintiff exhausted administrative remedies and filed a timely Complaint with this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues for judicial review:

1. The residual functional capacity determination is unsupported by substantial evidence.
2. The ALJ did not properly evaluate Plaintiff's subjective allegations

## Legal Standard

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.  Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work?  *See* 20 C.F.R. § 404.1520.  An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled.  A negative answer at any step, other than at step 3, precludes a finding of disability.  The claimant bears the burden of proof at steps 1–4.  Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### Decision of the ALJ

The ALJ followed the five-step analytical framework with respect to Plaintiff's application. He found that Plaintiff suffered from the following severe impairments since the alleged onset date of disability: restrictive lung disease; fibromyalgia; osteoarthritis of bilateral hands; degenerative joint disease of the bilateral knees; and adjustment disorder with mixed anxiety and depression" (Tr. 17). The ALJ further found that none of Plaintiff's impairments or combination of impairments met or medically equaled the criteria of a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 18-19).

The ALJ determined that Plaintiff had the RFC to do the following:

Reduced range of light work as defined in 20 CFR 404.1567(b). Specifically, lift and/or carry twenty pounds occasionally and ten pounds frequently, stand six hours without interruption and eight hours total in an eight-hour workday, walk six hours without interruption and eight hours total in an eight-hour workday, sit eight hours

without interruption and eight hours total in an eight-hour workday, frequently work around vibrations, and occasionally work around humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. The claimant can concentrate and persist for simple, routine tasks.

(Tr. 19). The ALJ concluded that Plaintiff was unable to perform her past relevant work but was able to perform a significant number of other unskilled light exertional jobs in the national economy, and as a result was not disabled (Tr. 26-27).

### The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

### Evidentiary Hearing

Plaintiff was represented by counsel at her hearing on June 18, 2020, and supplemental hearing on February 12, 2021 (Tr. 35-76, 929-957). She testified to the following: Plaintiff was 55 years old and attended two years of college. She earned an Associate's degree in criminal justice. Plaintiff was not working and received retirement money and a pension. She was divorced and has four children, the youngest of who lived with her.

Plaintiff spent 90 % of her day lying down due to pain and depression. She napped about two times per day. She had trouble writing – she dropped pens and was unable to stay focused. Plaintiff experienced neck pain that averaged a 5-7 out of 10 on a pain scale. She had right shoulder pain, hip pain, and knee pain, and also experienced sharp pains and muscle spasms. Her fibromyalgia caused her pain all over her body. Plaintiff could grocery shop once every two weeks, do small loads of laundry, and could walk for about thirty minutes.

A vocational expert ("VE") testified at the hearing. The ALJ posed hypothetical questions to the expert that corresponded to the ultimate RFC findings. *Id*. The VE testified that work exists

in the national economy for an individual with Plaintiff's conditions, including housekeeper, produce sorter, and silverware wrapper. *Id*.

### Relevant Medical Records

Since 2012, Plaintiff has treated with rheumatologist Alan Alberts, M.D. for fibromyalgia, knee pain, arthritis, and fatigue. Here medications include Lyrica 225 mg later increased to 300 mg twice daily, duloxetine 30 mg later increased to 60 mg, acetaminophen/oxycodone 325/7.5 mg every six hours as needed for pain, alprazolam 0.25 mg three times daily (Tr. 577-617, 681-684).

A 2015 nerve conduction study revealed bilateral carpal tunnel syndrome, moderate at the right, with mild chronic neurogenic changes in the right triceps suggestive of cervical spine (C7) radiculopathy (Tr. 494). In March 2017, Plaintiff underwent a surgical right carpal tunnel release. She complained of numbness and tingling in across the median nerve, pain, and nocturnal paresthesia. Examinations had shown positive Phalen's and Tinel's,and pain and tenderness at the epicondyle. In July 2017, Plaintiff underwent left carpal tunnel injections with surgery anticipated (Tr. 477, 490). In September and October 2017, bilateral finger tendinitis was treated with injections (Tr. 476-81). By November 2017, Plaintiff had recovered from the right carpal tunnel surgery, but did have a positive Tinel's at the left wrist indicating nerve compression and palpable wrist flexor synovitis (swelling); she was advised to return when ready to proceed with left carpal tunnel surgery (Tr. 474-75).

In December 2016, Plaintiff was diagnosed with asthma with a moderate restrictive lung defect, which was managed with preventative medications and inhalers for acute episodes. (R. 395-402). Plaintiff's doctor reported that she was doing better with Symbicort medication in January 2017 (Tr. 397). Plaintiff reported shortness of breath and that her exercise tolerance had improved. *Id*. In March 2018, chest x-rays showed no acute inflammatory changes in the chest

but scarring in the right lower lobe with vascular crowding with volume loss (Tr. 561). Plaintiff's asthma was noted to be uncomplicated (Tr. 21, referring to *e.g.,* Tr. 626-27, 632-33, 638, 642-43).

Dr. Alberts issued Plaintiff a handicapped parking permit in April 2017 and noted that she was experiencing a flare in fibromyalgia symptoms (Tr. 684). On October 19, 2017, Dr. Alberts noted Plaintiff reported feeling the same with pain in her arms, feet, knees, neck, and back and fatigue, and had lowered the Lyrica dosage to 150 mg twice daily due to weight gain (Tr. 685-86). She was noted as able to perform basic household activities and self-care with some difficulty, but inability to walk two miles, participate in sports/games, or sleep well (Tr. 690). On examination, Dr. Alberts noted patella crepitus (Tr. 687). He reiterated diagnoses including fibromyalgia, chronic, unchanged; primary generalized osteoarthritis, chronic, unchanged; and fatigue, chronic, unchanged (Tr. 688).

On November 29, 2017, Plaintiff was examined by primary care provider Ross Schwartz, M.D., reporting symptoms including joint pain (Tr. 860). Dr. Schwartz referred Plaintiff to an orthopedist for her knees (Tr. 862).

On February 15, 2018, Plaintiff reported "feeling worse" with pain in her arms, hands, lower back and left leg, and knees, with fatigue and myalgias (Tr. 691, 693). On examination, Dr. Alberts noted Heberden's nodes and Bouchard's notes (bony growths at finger joints seen with osteoarthritis), patella crepitus, and a stiff cervical spine (Tr. 694).

Plaintiff had a chest x-ray and CT scan in March 2018 which indicated mild degenerative changes of the thoracic spine (Tr. 808-09). From March through May 2018, Plaintiff received 14 sessions of chiropractic treatment and pain management modalities of interferential stimulation, ultrasound, ice, laser therapy, and traction with Allyah Stotter, D.C. for spine pain (Tr. 498-525).

On May 17 and September 20, 2018, Plaintiff reported feeling the same with pain in her

hands, knees, back, and neck and significant fatigue despite duloxetine 30 mg, Lyrica 225 mg twice daily, Cymbalta 60 mg, acetaminophen/oxycodone 325/7.5 mg every six hours as needed, alprazolam 0.5 mg three times daily, and meloxicam 15 mg (Tr. 696, 698, 703, 704, 706, 710). On examination, Dr. Alberts again noted Heberden's nodes and Bouchard's nodes, patella crepitus, and a stiff cervical spine (Tr. 698, 706). On July 3, 2018, Dr. Schwarz saw Plaintiff for an upper respiratory infection, but also noted back pain, joint pain, and fibromyalgia symptoms (Tr. 851). On examination, he noted "multiple trigger points cervical/dorsal/lumbar spine" (Tr. 852).

In December 2018, two weeks before her insured status expired, Plaintiff had a follow-up examination (Tr. 22, referring to Tr. 544-48, duplicated at Tr. 629-33). Neil Schultz, M.D., found Plaintiff was in no acute distress, and her examination findings were for the most part normal, except for some knee tenderness (Tr. 22, referring to Tr. 547, 632). Motor strength and sensory responses were normal in her arms and legs, and she demonstrated other normal neurological findings (*Id.*).

In January 2019, Plaintiff reported feeling "the same or worse" with whole body pain despite the addition of Abilify 5 mg. (Tr. 711, 717). Dr. Alberts' findings on examination were unchanged, and medications were continued. Id.

Plaintiff was examined in February 2019, by orthopedist Erol Yodas, M.D., for bilateral knee pain (Tr. 619-22). Dr. Yodas noted that Plaintiff was seen in the remote past and treated with joint supplementation injections "which seemed to work for several months, but she continues to have pain and discomfort" described as sharp, grinding, catching, and locking (Tr. 619). On examination, Dr. Yodas noted a generally normal examination with the exception of significant crepitation of the patellofemoral joint" (Tr. 619-20). He noted the X-rays indicated "significant" patellofemoral degenerative joint disease ("DJD") of both knees, which was his diagnosis (Tr.

620). Dr. Yodas "explained she has torn tissue . . . at this point the DJD is significant, and she needs to talk [to] Dr. Roche about the role of [surgical joint replacement]" and also discuss injection treatment with another provider (Tr. 620).

In May 2019, Plaintiff informed Dr. Alberts that she was feeling the same and was considering bilateral total knee replacement surgery, but explained that she "does not feel ready" for the total knee replacement surgery (Tr. 718).

## Medical Opinion

Medical expert Mark Farber, M.D., was present at the 2020 hearing. The ALJ obtained responses to interrogatories from Dr. Farber relating to the period from "January 1, 2013 through present" following the 2020 hearing (Tr. 880-926). On September 23, 2020, Dr. Farber provided a response, noting his opinion addressed Plaintiff's "pulmonary impairment only" of restrictive lung disease (Tr. 914, 917, 918). Dr. Farber also noted his specialty was "pulmonary disease." (Tr. 920). He opined that Plaintiff was limited to performing light exertional activity due to moderate restrictive lung disease since the December 22, 2016, pulmonary function test (Tr. 920-23). Specifically, Plaintiff could sit, stand, or walk a total of eight hours in an eight-hour workday, and could lift and carry up to 10 pounds frequently and ten pounds occasionally. (Tr. 915-16).

At the 2021 hearing, Dr. Farber confirmed that his interrogatory responses related only to pulmonary impairments (Tr. 48). He opined that Plaintiff retained the capacity for a range of light work that accommodated limits for frequently working around vibrations and occasionally working around pulmonary irritants (Tr. 61-62, referring to interrogatory answers at Tr. 914-19). He testified that his hearing testimony was based on the entire record evidence identifying impairments of restrictive lung disease, fibromyalgia, osteoarthritis of the hands, and degenerative joint disease of the knees.

## Discussion

ALJs evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements. 20 C.F.R. § 404.1520c(c)(1)– (5). The ALJ must explain only how she considered the first two factors—supportability and consistency—but need not explain her consideration of the other factors. *Id.* § 404.1520c(b)(2). Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion. *Id.* § 404.1520c(c)(1). And consistency assesses how a medical opinion squares with other evidence in the record. *Id.* § 404.1520c(c)(2).

In this case, the ALJ gave significant weight to the opinions of non-treating medical expert Dr. Farber. The ALJ found Dr. Farber's opinions were "persuasive and consistent with and supported by the medical evidence record." Dr. Farber did not examine Plaintiff but instead based his opinion on his review of the medical records. He originally opined regarding only Plaintiff's pulmonary impairments. During the supplemental hearing, however, Dr. Farber testified that he had reviewed Plaintiff's entire medical file, including her history of carpal tunnel, fibromyalgia, knee pain, and arthritis. Based on questioning from the ALJ, Dr. Farber testified, without much elaboration, that all of Plaintiff's medical conditions were encompassed in his opinion that Plaintiff could perform light exertional activity, could stand, sit, or walk a total of eight hours in an 8-hour workday and could lift up to 10 pounds.

Dr. Farber's testimony includes inaccuracies about Plaintiff's carpal tunnel and knee injuries. He testified that he did not see evidence that she had impairments consistent with carpal

tunnel. This statement is belied by the medical evidence of Plaintiff's history of carpal tunnel, including findings of a positive Tinel's at the left wrist. Dr. Farber's assessment did not sufficiently address this evidence contrary to his opinion.

Dr. Farber acknowledged that while "at some point, she might need a total knee replacement . . . I didn't see something that needed it right now [sic]." (Tr. 50). Medical records indicate that in 2017 Plaintiff's knees were symptomatic with pain and crepitus, she was known to have osteoarthritis of the knees, and had three prior knee surgeries. The records also indicate, that by February 2019, Dr. Yodas noted x-rays indicated "significant" patellofemoral DJD of both knees and the need to discuss knee replacement surgery with Dr. Roche. Thus, Dr. Farber's conclusion that Plaintiff was not in need of knee replacement surgery during the period at issue is unexplained and inconsistent with the record. Additionally, Dr. Farber did not explain how this severe impairment was consistent with his opinion that Plaintiff could sustain standing and walking for a full eight-hour workday.

The Seventh Circuit has repeatedly held that "although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). "The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Id*. *See also Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) ("In assessing a plaintiff's RFC, an ALJ must consider all relevant evidence in the case record and evaluate the record fairly."). Here, the ALJ did not acknowledge Plaintiff's prior knee surgeries or the need for a replacement in the RFC.

Additionally, the ALJ's RFC finding does not consider Plaintiff's testimony about the pain she experiences due to her fibromyalgia and arthritis which make activities such as sitting,

standing, walking, and bending difficult. She stated that she could sit or stand for "a few minutes" at a time before experiencing back pain, and then would need to lie down for 10-15 minutes at a time.

The Court finds that the ALJ's failure to fully address the evidence related to Plaintiff's alleged inability to sit and stand for prolonged periods of time during the workday constitutes error. The ALJ's findings did not sufficiently consider Plaintiff's subjective allegations or properly explain why the allegations were rejected. While there may be reasons Plaintiff's testimony could have been discounted, "it was incumbent on the ALJ to provide those reasons in the first place." *Shawntel M. J. v. Comm'r of Soc. Sec.* 2021 WL 4478652, at *9 (S.D. Ill. Sept. 30, 2021), citing *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005).

Moreover, the ALJ "must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir.2009); *see also Liggins v. Colvin*, 593 Fed. Appx. 564, 568 (7th Cir. 2015); *Eakin v. Astrue*, 432 Fed. Appx. 607, 611 (7th Cir. 2011) (ALJ's error was compounded by failure to address claimant's "testimony about limitations arising from radiating pain in her hip, about her inability to sit and stand for extended periods of time, and about the frequency with which she needed to alternate positions"). Accordingly, remand is appropriate in this case for further assessment of the residual functional capacity.[2]

## Conclusion

After careful review of the record, the Court finds that the ALJ committed errors of law. Therefore, the final decision of the Commissioner of Social Security denying Plaintiff's

---

[2] This Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff is disabled or that she should be awarded benefits. The Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: March 30, 2023

**STACI M. YANDLE**
**United States District Judge**